IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| **ALBERT ET AL.,**<br><br>　　Plaintiffs,<br><br>v.<br><br>**AMERICAN SOCIETY OF HEALTH-SYSTEM PHARMACISTS, INC. ET AL.,**<br><br>　　Defendants. | Civil No. 8:25-cv-00673-DLB |

**DEFENDANT NATIONAL MATCHING SERVICES INC.'S
REPLY MEMORANDUM OF LAW IN SUPPORT OF ITS SUPPLEMENTAL
MOTION TO DISMISS BASED ON LACK OF PERSONAL JURISDICTION**

Plaintiffs concede that this Court lacks general personal jurisdiction over Defendant National Matching Services Inc. ("NMS"). (*see Plaintiffs' Memorandum in Opposition to Defendant National Matching Services Inc.'s Supplemental Motion to Dismiss Based on Lack of Personal Jurisdiction* (ECF No. 222 (the "Opposition") at 4, n. 2.)  With a general jurisdiction theory foreclosed to Plaintiffs, they argue that the Court has jurisdiction over NMS because NMS had specific contacts with Maryland. (*Id.* at 1, 5-8, 10-11.)   Recognizing that neither the *Consolidated Class Action Complaint* (ECF No. 113 (the "Complaint")) nor the Opposition articulate sufficient minimum contacts to confer specific jurisdiction, Plaintiffs shift to an alternative argument—conspiracy theory jurisdiction—in a last-ditch effort to keep NMS—the company that made no hiring decisions nor promulgated any rules but merely ran its proprietary, electronic algorithm from Canada—in this case.[1] (Opp'n at 1, 12-15.) However, none of Plaintiffs' theories are availing. NMS should be dismissed for the following reasons.

***First***, as NMS demonstrated in its *Supplemental Motion to Dismiss Based on Lack of Personal Jurisdiction* (ECF No. 220-1 (the "NMS Opening Brief")), Plaintiffs have failed to plead actionable conduct demonstrating that NMS specifically targeted Maryland sufficient to establish specific jurisdiction. That failure is fatal, and Plaintiffs' Opposition failed to cure it.

***Second***, the cases on which Plaintiffs rely fail to support a finding of jurisdiction over NMS.

***Third***, as demonstrated in *Defendants' Memorandum of Law in Support of Their Motion to Dismiss* (ECF No. 221-1) (the "Joint Opening Brief"),[2] Plaintiffs failed to adequately plead a

---

[1] Plaintiffs' request for jurisdictional discovery in the alternative is yet another tacit acknowledgement that they have not adequately pleaded facts establishing that this Court has personal jurisdiction over NMS. (Opp'n at 15.)

[2] NMS previously joined in and adopted the arguments set forth in the Joint Opening Brief, and hereby adopts and incorporates by reference the *Defendants' Reply In Support of Their Motion to Dismiss* ("Joint Reply Brief"), contemporaneously filed herewith.

1

conspiracy between Defendants. In turn, any argument for jurisdiction based on a conspiracy theory necessarily fails.

Accordingly, the Court should dismiss NMS because it lacks jurisdiction over NMS—general, specific, conspiracy, or otherwise.

## I. The Amended Complaint Fails to Adequately Plead Sufficient Minimum Contacts by NMS That Were Targeted at Maryland.

In their Opposition, Plaintiffs argue that the Court should find that it has specific jurisdiction over NMS because "NMS maintains an ongoing, long-term contractual relationship with ASHP, with knowledge that ASHP[3] is based in Maryland". (Opp'n at 7.) Plaintiffs base this theory on Paragraphs 4, 40(b), 56, and 79 of the Amended Complaint, as well as Paragraph 4 of the September 17, 2025 Declaration of Elliott Peranson (ECF No. 220-2) ("Peranson Decl."). (Opp'n at 7-11.) These allegations, however, are insufficient to establish jurisdiction because Plaintiffs fail to demonstrate that NMS's alleged contacts with Maryland are more significant than, or targeted above, NMS's contacts with any other state in which it does business. This is insufficient to confer jurisdiction over a foreign defendant. *Fidrych v. Marriott Int'l, Inc.*, 952 F.3d 124, 141 (4th Cir. 2020); *ALS Scan, Inc. v. Digital Serv. Consultants, Inc.*, 293 F.3d 707, 715 (4th Cir. 2002); *Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs., Inc.*, 334 F.3d 390, 401 (4th Cir. 2003).

Tellingly, Paragraph 40(b) of the Amended Complaint completely contradicts Plaintiffs' new, Opposition-based proposition that NMS targeted its conduct at Maryland above any other state such that it should be subject to being haled into Court here. To be clear, paragraph 40(b) of the Amended Complaint alleges that "NMS transacts business **in the United States**, including

---

[3] Unless defined herein, Capitalized terms have the meanings set forth in the NMS Opening Brief.

2

across state lines"—i.e., Maryland is one of several states where NMS has business. Paragraph 40(b) goes on to mention that "NMS operates matching programs under contract with professional associations located *in various states*"—i.e., Maryland is not unique to NMS's business model. Paragraph 40(b) continues that "NMS sends personnel to each of those various states"—i.e., NMS has not chosen to target Maryland above any other state with respect to where it sends its personnel. Paragraph 40(b) further alleges that "NMS accepts and sends payments … and distributes published materials over the internet *in every or nearly every state*, including Maryland"—i.e., Maryland is no different than NMS's contacts with any other state.

In contrast, Plaintiffs now attempt to argue that after reading Paragraph 40(b), the Court should somehow be able to conclude:

> NMS processes applications from Maryland applicants, services residency programs based in Maryland, delivers Match results to Maryland applicants, and places applicants—*including those from Maryland schools*—into Maryland programs (e.g., Johns Hopkins's pharmacy residency) …NMS also received substantial revenue from Maryland, both through its contract with ASHP and application fees from Maryland-based applicants and programs.

(Opp'n at 7 (emphasis added).) However, the Amended Complaint makes absolutely no mention of any amount of revenue NMS receives from ASHP or from Maryland-based applicants and/or programs. These authoritative "conclusions" about whether NMS in fact received "substantial revenue from Maryland" are unfounded and should be ignored by this Court—especially where Plaintiffs' pleadings are not qualified with "upon information and belief" and do not attach any agreement between NMS and ASHP or even describe specific financial terms upon which such representations could be potentially based. *Masselli & Lane, PC v. Miller & Schuh, PA*, 2000 U.S. App. LEXIS 11932, at *4 (4th Cir. May 30, 2000) ("the court need not 'credit conclusory allegations or draw farfetched inferences.'").

3

Notably, the only Maryland connection alleged as to NMS appears in Paragraph 56 of the Amended Complaint, which alleges that NMS entered a contract with ASHP—an organization allegedly organized under the laws of Maryland. That is it. The Amended Complaint is devoid of any allegation that the alleged contract between NMS and ASHP: (a) was negotiated in Maryland; (b) was executed by NMS in Maryland; or even (c) prioritizes services to be performed in Maryland, while subordinating service in other states.

Plaintiffs' assertion in Paragraph 79 of the Amended Complaint that NMS's website was not "freely accessible" is a red herring. To the contrary, NMS's website is freely accessible at https://natmatch.com/. Further, Plaintiffs imply that NMS's website constitutes targeted conduct simply by alleging in Paragraph 79 that residency directors are required to obtain login credentials to gain access to the full suite of services on NMS's website. (Opp'n at 10-11.) However, the alleged "login credential requirement" is meaningless with respect to NMS's allegedly targeted conduct at Maryland unless Plaintiffs can also plausibly allege either: (a) only Maryland-based users were subject to the login credential requirement; and/or (b) the only users with login credentials were based in Maryland, such that it can be said that Maryland was a targeted market for NMS's website. No such argument can be made in good faith, however, because as Plaintiffs concede: (i) residency directors were based in various states other than Maryland; (ii) out of state residency directors were subject to this same login credential requirement; and (iii) out of state residency directors received login credentials as required. (Am. Compl. ¶¶ 17-19, 21-33, 79, 82-83.) In sum, NMS's full website was "freely available" to residency directors nationwide—it was not restricted to only those located in Maryland.

Similarly, Paragraph 4 of the Amended Complaint does not save Plaintiffs' argument because it consists of entirely conclusory statements rather than fact-based allegations.

4

Paragraph 4 of the Peranson Declaration similarly does Plaintiffs no favors. Similar to Plaintiffs' own Amended Complaint, therein, Mr. Peranson made no specific reference to NMS personnel ever visiting Maryland; nor did he assert that NMS personnel visited Maryland more than any other state; nor did he assert that NMS personnel visited ASHP in Maryland. (Peranson Decl. ¶ 4) ("NMS employees from time to time have traveled to *various states within the United States* …") (emphasis added).

Thus, specific jurisdiction over Canadian NMS is nonexistent here where Plaintiffs can point to no allegations demonstrating NMS targeted its conduct at Maryland above any other state.

## II. The Case Law Cited by Plaintiffs Does Not Support a Finding of Jurisdiction Over NMS.

In citing Paragraphs 40(b) and 56 of the Amended Complaint, Plaintiffs ask this Court to find that NMS's conduct somehow fits within Sections 6-103(b)(1) and (b)(2) of Maryland's long arm statute as a means of establishing jurisdiction. (Opp'n at 5-8.) However, the principal cases upon which Plaintiffs' request is rooted are distinct from the facts of this case and therefore do not aid Plaintiffs' cause. To the contrary, each of them involve multiple ties to Maryland, including Maryland-focused contracts and/or Maryland property and/or a true physical presence in Maryland such that the defendant should have anticipated being haled into Court in Maryland.

First, in *Hausfeld v. Love Funding Corp.*, the plaintiff sued the out-of-state defendant based on a commissions agreement he had with the defendant related to a real estate transaction involving Maryland real estate. 16 F. Supp. 3d 591, 597-99 (D. Md. 2014). In this case, however: (i) Maryland real estate is not involved; (ii) Plaintiffs are not in contractual privity with NMS; and (iii) none of the Plaintiffs are Maryland residents, nor have they alleged that they suffered damages as a result of NMS's specific contacts in Maryland.

Next, *Metro. Reg'l Info. Sys. v. Am. Home Realty Network, Inc.*, is a copyright infringement case. 888 F. Supp. 2d 691 (D. Md. 2012). There, the court based its jurisdictional decision on the fact that the defendant: (1) initiated contact with Maryland real estate professionals; (2) solicited business directly from Maryland residents on a regular basis via electronic communications; (3) received substantial revenues from Maryland real estate transactions; and (4) advertised itself as having a Maryland real estate license with Maryland headquarters for a portion of the relevant period. *Id*. at 701-03. Here, however: (i) a copyright infringement claim is not involved; (ii) NMS did not solicit business directly from residency candidates; (iii) there are no factual allegations about revenues paid by Maryland residency candidates to NMS; and (iv) NMS is not subject to licensure in Maryland, nor is it headquartered in Maryland.

Similarly, *Li Fen Yao v. Chen*, is distinguishable, because it involved a convoluted procedural history with multiple entities and an individual defendant. 2024 WL 1051740 at *8 (D. Md. Mar. 11, 2024). There, the Court found jurisdiction was proper over several LLC defendants based on a theory of successor liability because the predecessor entity maintained office space and employees in Maryland, and also took out loans in Maryland. *Id.* at *8. Plaintiffs here, however, are not asserting that jurisdiction is proper based on a successor liability theory. Separately, the individual defendant in *Li Fen Yao*: (1) initiated contact with a known Maryland resident; (2) mailed a business contract to a Maryland address where it actually was signed; (3) received payments from Maryland; and (4) hired employees that were known Maryland residents to perform work at his company's Maryland office address. *Id*. None of these same facts are alleged here.

Next, *Jason Pharm., Inc. v. Jianas Bros. Packaging Co.*, is a case involving the sale of machinery. 94 Md. App. 425, 617 A.2d 1125 (1993). There: (1) the out-of-state defendant contracted to purchase equipment directly from the Maryland plaintiff; (2) the sales contract at

6

issue required that consummation be in Maryland at the plaintiff's mailing address; and (3) the defendant made a down payment in Maryland for the equipment at issue. *Id.* at 433-34.  Here, however: (i) the sale of equipment is not at issue; (ii) there have been no factual allegations as to how and where any agreement between NMS and ASHP was negotiated or where it was consummated; and (iii) there are no allegations that NMS sent money into Maryland as part of its contractual obligations upon which Plaintiffs' claims arise.

Similarly, *Tulkoff Food Prods., Inc. v. Martin*, is distinguishable, because there, the Court found: (1) the parties' relationship involved over twenty (20) years of business dealings, resulting in twenty-seven (27) contracts for the delivery of over 10 million pounds of products into the state of Maryland, the value of which was worth several million dollars; (2) the contract at issue was also for the delivery of food in Maryland; and (3) the plaintiff was a counterparty to the contract at issue. 2017 WL 2909250, at *1-2, 6 (D. Md. July 7, 2017).  Importantly, the *Tulkoff Food Prods., Inc.* court also explained that "Although a defendant need not engage in 'commerce or ... transactions for profit,'[ ] '**Maryland courts have construed the phrase 'transacting business' narrowly**, requiring, for example, **significant negotiations or intentional advertising and selling** in the forum state.'[ ]" *Id.* at *5 citing *Aphena Pharma Sols.-Maryland LLC v. BioZone Labs., Inc.*, 912 F. Supp. 2d 309, 315 (D. Md. 2012) (emphasis added).  Conversely, here: (i) there have been no factual allegations as to the nature and extent of NMS's and ASHP's relationship, including the dollar value of the relationship; (ii) the delivery of goods into the state is not at issue; (iii) there have been no factual allegations as to how and where any such agreement was negotiated; and (iv) Plaintiffs here were not party to any such agreement between NMS and ASHP such that NMS should reasonably anticipate being haled into court in Maryland by Plaintiffs.

*Coastal Labs., Inc. v. Jolly*, is also factually distinguishable. 502 F. Supp. 3d 1003 (D. Md. 2020).  In *Coastal Labs., Inc.*: (1) plaintiffs contracted with defendants for purposes of providing lab testing services to the plaintiff's existing Maryland clients; (2) defendants maintained a web portal for plaintiffs' Maryland customers, to which defendants ultimately cut off access; and (3) defendants communicated directly with plaintiffs' customers following the cut off for purposes of contracting with them directly as a way of cutting plaintiffs out of the relationship altogether. *Id*. at 1018-20.  While factually distinct, the rule explanation in *Coastal Labs., Inc.* is instructive here:

> The Supreme Court has made clear that ***an out-of-state party's contract*** with a party based in the forum state ***cannot*** "automatically establish sufficient minimum contacts" in the forum state. *Burger King Corp. v. Rudzewi*cz, 471 U.S. 462, 478 (1985). ***Instead***, the court must perform an individualized and pragmatic inquiry into the surrounding ***facts such as prior negotiations, the terms of the contract, the parties' actual course of dealing, and contemplated future consequences***, in order to determine "whether the defendant purposefully established minimum contacts within the forum." *Id.* at 479, 105 S. Ct. 2174; *see also Mun. Mortgage & Equity v. Southfork Apartments Ltd. P'ship*, 93 F. Supp. 2d 622, 626 (D. Md. 2000). Among the ***specific facts that courts have weighed are "where the parties contemplated that the work would be performed, where negotiations were conducted, and where payment was made."*** *Mun. Mortgage & Equity*, 93 F. Supp. 2d at 626 (internal quotation omitted). One of the most important factors is "whether the defendant initiated the business relationship in some way." *See id.* at 626-27 (quoting *Nueva Engineering, Inc. v. Accurate Electronics, Inc.*, 628 F. Supp. 953, 955 (D. Md. 1986)). Ultimately, the question is whether the contract had a "substantial connection" to the forum state. *Burger King*, 471 U.S. at 479, 105 S. Ct. 2174; *Diamond Healthcare of Ohio, Inc. v. Humility of Mary Health Partners*, 229 F.3d 448, 451 (4th Cir. 2000).

*Coastal Labs., Inc.*, 502 F. Supp. 3d at 1018-19 (emphasis added).  Here, the Amended Complaint falls short because it does not allege that: (i) NMS contracted to provide services specifically for ASHP's Maryland-based clients; (ii) "prior negotiations" between NMS and ASHP took place in Maryland; (iii) "the parties' actual course of dealing, and contemplated future consequences" involved Maryland; (iii) NMS and ASHP "contemplated that [NMS's] work would be performed"

8

in Maryland; (iv) "the negotiations were conducted" in Maryland; (v) that "payment was made" in Maryland; or (v) NMS "initiated the business relationship in some way."

### III. The Amended Complaint Fails to Adequately Plead a Conspiracy Involving NMS.

In failing to adequately plead sufficient minimum contacts to establish specific jurisdiction over NMS, Plaintiffs shift next to a conspiracy theory as a basis for jurisdiction. (Opp'n at 12-15.)

To establish personal jurisdiction via a conspiracy theory, a complaint must allege:

> (1) that a conspiracy existed; (2) that the [] defendants participated in the conspiracy; and (3) that a coconspirator's activities in furtherance of the conspiracy had sufficient contacts with [the proposed forum state] to subject that conspirator to jurisdiction in [the proposed forum state]. *See Lolavar v. de Santibanes,* 430 F.3d 221, 229 (4th Cir.2005); *McLaughlin v. McPhail,* 707 F.2d 800, 807 (4th Cir.1983) (per curiam). To satisfy these requirements, the plaintiffs would have to rely on more than "bare allegations." *Lolavar,* 430 F.3d at 229 (internal quotation marks omitted); *see also Jungquist v. Sheikh Sultan Bin Khalifa Al Nahyan,* 115 F.3d 1020, 1031 (D.C.Cir.1997) ("[T]he plaintiff must plead with particularity the conspiracy as well as the overt acts within the forum taken in furtherance of the conspiracy").

*Unspam Techs., Inc. v. Chernuk*, 716 F.3d 322, 329 (4th Cir. 2013).

As set forth in the Joint Opening Brief to which NMS joined and fully adopted, as well as the Joint Reply Brief in which NMS joins and hereby incorporates by reference, Plaintiffs cannot adequately allege a conspiracy. This is especially true with respect to NMS, because NMS: (1) was not a party to any agreement between the Defendants and ASHP; (2) had no role in setting or enforcing Match rules; and (3) did not collect, publish, or disseminate wage information. Because adequate pleading of a conspiracy is a condition precedent to jurisdiction, Plaintiffs' failure to plead a requisite conspiracy renders their conspiracy theory argument moot.

9

## IV. Plaintiffs Are Not Entitled to Jurisdictional Discovery if They Lose Here—Any Such Permission is Discretionary.

Plaintiffs request a second bite at the apple should the Court find—which it should—that it lacks personal jurisdiction over Canadian Defendant NMS. (Opp'n at 15.) As the Court in *Tulkoff Food Prods., Inc.*—a case cited by Plaintiffs—explained:

> ***If the existence of jurisdiction turns on disputed factual questions*** the court may resolve the [jurisdictional] challenge on the basis of a separate evidentiary hearing, or may defer ruling pending receipt at trial of evidence relevant to the jurisdictional question." *Combs*, 886 F.2d at 676. ***A court may*** also, ***in its discretion***, permit discovery as to the jurisdictional issue. *See Mylan Laboratories, Inc. v. Akzo, N.V.*, 2 F.3d 56, 64 (4th Cir. 1993). ***However, neither discovery nor an evidentiary hearing is required*** in order for the court to resolve a motion under Rule 12(b)(2).

2017 WL 2909250, at *3 (emphasis added).

No such factual questions are in dispute. It is undisputed that:

- NMS is a foreign entity with no assets, employees, or offices in Maryland.

- The Amended Complaint fails to adequately plead conduct by NMS targeted at Maryland.[4][5]

- The Amended Complaint fails to adequately plead that NMS knowingly joined a conspiracy that was carried out in Maryland.

Thus, Plaintiffs' "fishing expedition" is unnecessary and would be futile, as no discovery can cure a fatally-flawed Amended Complaint focused on an entity with no ties to this forum.

## CONCLUSION

For the foregoing reasons, this Court should dismiss NMS from this case for lack of personal jurisdiction.

---

[4] *See Pandit v. Pandit*, 808 F. App'x 179, 187 (4th Cir. 2020) (affirming district court's denial of request for jurisdictional discovery because plaintiff "alleged no facts suggesting the possible existence of personal jurisdiction over any of the [nonresident defendants].").

[5] "When a plaintiff offers only speculation or conclusory assertions about contacts with a forum state, a court is within its discretion in denying jurisdictional discovery." *Carefirst of Md., Inc.*, 334 F.3d at 402.

|  |  |
|---|---|
| Dated: December 3, 2025 | Respectfully submitted,<br><br>**MINTZ, LEVIN, COHN, FERRIS, GLOVSKY and POPEO, P.C.**<br><br>/s/ *Castell Abner, III*<br>Michelle N. Lipkowitz<br>Federal Bar No. 27188<br>Castell Abner, III<br>Federal Bar No. 22328<br>555 12th Street, NW<br>11th Floor<br>Washington, DC 20004<br>(202) 434-7300<br>MNLipkowitz@Mintz.com<br>CAbner@Mintz.com<br><br>*Attorneys for Defendant National Matching Services Inc.* |